132 Nev., Advance Opinion 24

IN THE SUPREME COURT OF THE STATE OF NEVADA

WILLIAM POREMBA,
Appellant,
vs.
SOUTHERN NEVADA PAVING; AND
S&C CLAIMS SERVICES, INC.,
Respondents.

No. 66888



FILED

APR 0 7 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review in a workers' compensation matter. Eighth Judicial District Court, Clark County; Valorie J. Vega, Judge.

*Reversed and remanded with instructions.*

Dunkley Law and Mark G. Losee and Matthew S. Dunkley, Henderson, for Appellant.

Lewis Brisbois Bisgaard & Smith, LLP, and Daniel L. Schwartz and Jeanne P. Bawa, Las Vegas, for Respondents.

BEFORE DOUGLAS, CHERRY and GIBBONS, JJ.

*OPINION*

By the Court, CHERRY, J.:

NRS 616C.215(2)(a) provides that when an injured employee who receives workers' compensation also recovers damages from the responsible party, the amount of workers' compensation benefits must be reduced by the amount of the damages recovered. We held in *Employers Insurance Co. of Nevada v. Chandler*, 117 Nev. 421, 23 P.3d 255 (2001), that an insurer may refuse to pay additional funds via reopening a

 

16-10872

workers' compensation claim until the claimant demonstrates that he or she has exhausted any third-party settlement funds and that medical expenses are considered to be compensation that an insurer may withhold until the recovery amount has been exhausted.

In this appeal, we clarify that while a claimant *may* exhaust his or her settlement funds on medical benefits, he or she is *not restricted* to using settlement funds on medical benefits. Although workers' compensation funds may only be spent on specific expenses, such as medical treatment, Nevada law does not preclude settlement funds from being used to cover typical household expenses.

## FACTS AND PROCEDURAL HISTORY

Appellant William Poremba worked for respondent Southern Nevada Paving as a construction driver. On July 22, 2005, in the course of his duty, Poremba was driving a truck when another driver struck the truck with his backhoe. Poremba suffered injuries to his head, neck, back, and knee. Poremba filed a workers' compensation claim, which Southern Nevada Paving, through respondent S&C Claims (collectively S&C), accepted. S&C eventually closed the claim, sending Poremba a letter with instructions on how to reopen the claim should his condition worsen.

Poremba also sued the backhoe driver and his employer. That lawsuit was settled on July 30, 2009, for $63,500, with a significant amount of that settlement paid directly to cover health-care providers' liens. Poremba personally received $34,631.51. He spent approximately $14,000 of the money he received on additional medical treatment. Poremba claims to have spent the remaining settlement money on personal living expenses, such as mortgage payments and food for his family.

Poremba attempted to return to work, but he was unable to do so. Additionally, his doctors instructed him not to go back to work. On January 10, 2013, Poremba sought to reopen his claim, but S&C denied his request. Poremba administratively appealed, and S&C filed a motion for summary judgment, arguing that our decision in *Chandler* precluded Poremba from reopening his claim because he spent settlement funds on expenses other than medical costs. After an evidentiary hearing, an appeals officer summarily granted S&C summary judgment. Poremba petitioned the district court for judicial review. The district court denied the petition, and this appeal followed.

## *DISCUSSION*

Poremba asserts that the appeals officer erred in granting summary judgment because, legally, he is not required to prove that he spent his excess recovery on medical expenses and because factual issues exist as to whether his injury had worsened, necessitating additional compensation. S&C argues that *Chandler* "clearly stands for" the proposition that a claimant who receives a third-party settlement may not spend any of that money on home loans or family expenses and reopen his or her workers' compensation claim when his or her medical situation changes. S&C argues that the point is to prevent a double recovery, asserting that double recovery means simply to recover from two sources for the same injury. We disagree. Although *Chandler* requires a claimant to exhaust all settlement funds before seeking additional funds by reopening his or her workers' compensation claim, we never required that those settlement funds be spent solely on medical expenses. Workers' compensation is a limited-scope benefit while personal injury recoveries are designed not only to pay for medical bills, but to compensate for pain and suffering and provide for lost wages.

This court's role in reviewing an administrative agency's decision is identical to that of the district court. *Elizondo v. Hood Mach., Inc.*, 129 Nev., Adv. Op. 84, 312 P.3d 479, 482 (2013). Although we defer to an agency's findings of fact, we review legal issues de novo, including matters of statutory interpretation. *Taylor v. State, Dep't of Health & Human Servs.*, 129 Nev., Adv. Op. 99, 314 P.3d 949, 951 (2013). We defer to an agency's interpretations of its governing statutes or regulations only if the interpretation "is within the language of the statute." *Id.* (internal quotations omitted). "It is unquestionably the purpose of worker's compensation laws 'to provide economic assistance to persons who suffer disability or death as a result of their employment.'" *Breen v. Caesars Palace*, 102 Nev. 79, 83, 715 P.2d 1070, 1072-73 (1986) (quoting *State Indus. Ins. Sys. v. Jesch*, 101 Nev. 690, 694, 709 P.2d 172, 175 (1985)). "This court has a long-standing policy of liberally construing these laws to protect workers and their families." *Id.* at 83, 715 P.2d at 1073 (quoting *State Indus. Ins. Sys.*, 101 Nev. at 694, 709 P.2d at 175).

*Whether NRS 616C.215(2) allows a claimant to reopen his or her workers' compensation claim after exhausting his or her settlement funds on nonmedical expenses*

Nevada law allows an insurer to claim an offset when the claimant receives money from a lawsuit against the party responsible for the injury. NRS 616C.215(2). In pertinent part, the statute provides as follows:

> 2. When an employee receives an injury for which compensation is payable pursuant to the provisions of chapters 616A to 616D, inclusive, or chapter 617 of NRS and which was caused under circumstances creating a legal liability in some person, other than the employer or a person in the same employ, to pay damages in respect thereof:

(a) The injured employee . . . may take proceedings against that person to recover damages, but the amount of the compensation the injured employee . . . [is] entitled to receive pursuant to the provisions of chapters 616A to 616D, inclusive, or chapter 617 of NRS, including any future compensation, *must be reduced by the amount of the damages recovered* . . . .

(b) If the injured employee . . . receive[s] compensation pursuant to the provisions of chapters 616A to 616D, inclusive, or chapter 617 of NRS, the insurer . . . has a right of action against the person so liable to pay damages and is subrogated to the rights of the injured employee or of the employee's dependents to recover therefor.

*Id.* (emphasis added). On its face, this statute does not foreclose a claimant from pursuing reopening of his or her workers' compensation claim, but merely entitles the insurer to an offset based on the settlement the claimant received.

In 2001, this court held that an insurer may withhold payment of medical benefits until the claimant has exhausted any funds received from a third-party settlement. *Chandler*, 117 Nev. at 426, 23 P.3d at 258. *Chandler* did not limit how the claimant may exhaust the settlement funds, despite S&C's assertions to the contrary. Accordingly, it is important to clarify *Chandler* and settle this issue moving forward. In *Chandler*, we held that "compensation," as specified in NRS 616C.215, included medical benefits. *Id.* We never ruled that wage replacement, or any other type of specific payments, were to be excluded. We concluded

that Chandler had to exhaust his settlement proceeds, but we did not decide how he had to exhaust those proceeds. *Id.*[1]

We conclude that it is prudent to clarify whether, according to *Chandler,* medical treatment is the only expense on which one is permitted to exhaust his or her settlement funds. We hold that it is not.

When a person is injured, he or she may sue the responsible party for payment to cover a variety of costs. Restatement (Second) of Torts § 924 (1979). While medical treatment is certainly among those costs, a plaintiff may also recover damages for lost wages if the defendant's actions prevented the plaintiff from working. *Id.* These lost wages, naturally, are meant to cover expenses that one's paycheck would normally cover, such as rent or mortgage, utilities, and groceries.

S&C is correct that the policy behind NRS 616C.215 is to prevent a double recovery. *Chandler,* 117 Nev. at 426, 23 P.3d at 258. S&C, however, mischaracterizes double recovery. Double recovery is characterized based not on the event necessitating the compensation, but on the nature of the compensation provided. S&C cites to *Tobin v. Department of Labor & Industries,* 187 P.3d 780 (Wash. Ct. App. 2008), for the proposition that a claimant should not receive a double recovery as well. *Tobin,* however, explains that double recovery prevents the claimant from receiving compensation from the insurer and "retain[ing] the portion of damages which would include those same elements." 187 P.3d at 783

---

[1]In 2007, we again held that compensation, for the purposes of workers' compensation laws, includes medical benefits. *Valdez v. Emp'rs Ins. Co. of Nev.,* 123 Nev. 170, 177, 162 P.3d 148, 152 (2007). We did not limit the term "compensation" to medical benefits.

(internal quotations omitted). The *Tobin* court held that the insurer was only entitled to the portion of proceeds from the third-party suit that correlate to the benefits it provided as a worker's compensation insurer. *Id.* at 784. The *Tobin* court continued:

> [The insurer]'s position would give it an "unjustified windfall" at [the claimant]'s expense. Under [the insurer]'s interpretation, it would be entitled to share in damages for which it has not provided and will never pay compensation. We do not interpret these statutes to require such a fundamentally unjust result. *[The insurer] did not, and will never, compensate [the claimant] for his pain and suffering, therefore it cannot be "reimbursed" from funds designated to compensate him for his pain and suffering.*

*Id.* (internal citations omitted) (emphasis added).

A worker should not receive funds from two sources to pay for the same lost wages or the same medical treatment. The worker, however, should be permitted to use settlement funds for some medical treatment, or reasonable lost wages expenses, and use workers' compensation funds for other medical treatments.[2] Poremba was hurt in July 2005, has been unable to work since, and sought to reopen his claim in January 2013. This means that he only needed to spend approximately $384.79 per month for the 90 months between the accident and his attempt to reopen his claim to exhaust the $34,631.51 in funds. Poremba does not appear to be trying to achieve a windfall, but to be properly using the system designed to pay for his workplace injuries. To deny him the opportunity to

---

[2]The record is silent as to whether Poremba's third-party settlement was specifically allocated to cover medical expenses, pain and suffering, and/or lost wages or if it was simply a general lump sum.

use a system designed to protect injured workers because he used some of his settlement money to feed himself and his family is patently unjust and not supported by the statute.

Accordingly, we conclude that while S&C is entitled to an offset based on the settlement funds received, that offset must include any reasonable living expense for which the settlement funds were used. Whether the funds were used for reasonable living expenses is a factual determination best made by the hearing officer, or in this case, the appeals officer.

Because Poremba was not required to choose between reasonable living expenses, such as paying for housing and food for himself and his family, and seeking workers' compensation to pay for his medical treatment, we must reverse the district court's denial of judicial review and instruct the district court to remand to the appeals officer for further proceedings consistent with this opinion.

*Whether the appeals officer erred when issuing a decision without detailed findings of fact and conclusions of law*

Poremba argues that the district court erred when it found no improper procedure because Nevada statutes require the appeals officer's order to contain findings of fact and conclusions of law, and they were absent in the appeals officer's order. He further argues that without these findings, it is more difficult for a court to conduct a meaningful review. S&C does not refute Poremba's arguments, but merely suggests that if correct, the remedy would be a remand for a more detailed order. We agree that a more detailed order is required.

Without detailed factual findings and conclusions of law, this court cannot review the merits of an appeal; thus, administrative agencies

SUPREME COURT
OF
NEVADA

(O) 1947A

8

are required to issue orders that contain factual findings and conclusions of law. NRS 233B.125. In pertinent part, the statute reads:

> A decision or order adverse to a party in a contested case *must* be in writing or stated in the record. . . . [A] final decision *must include findings of fact and conclusions of law, separately stated.* Findings of fact and decisions *must* be based upon substantial evidence. Findings of fact, if set forth in statutory language, *must* be accompanied by a concise and explicit statement of the underlying facts supporting the findings.[3]

*Id.* (emphases added). Each and every clause in this statute contains mandatory instruction for the appeals officer, leaving no room for discretion.

The requirements for a claimant to reopen a workers' compensation claim are contained within NRS 616C.390:

> 1. If an application to reopen a claim to increase or rearrange compensation is made in writing more than 1 year after the date on which the claim was closed, the insurer *shall* reopen the claim if:
>
> (a) A change of circumstances warrants an increase or rearrangement of compensation during the life of the claimant;
>
> (b) The primary cause of the change of circumstances is the injury for which the claim was originally made; and

---

[3]This statute was amended in 2015 and changed the standard from "substantial evidence" to "a preponderance of the evidence." 2015 Nev. Stat., ch. 160, § 7, at 708. This change does not affect this opinion.

(c) The application is accompanied by the certificate of a physician or a chiropractor showing a change of circumstances which would warrant an increase or rearrangement of compensation.

(Emphasis added.) The statute is silent as to funds that the claimant receives from any other source. *See id.*

Here, not only did the appeals officer fail to issue detailed findings of fact or conclusions of law, the appeals officer precluded Poremba from introducing evidence supporting reopening his case when he admitted that he spent settlement money on expenses beyond medical treatment. This illustrates that the appeals officer had the same false impression of the law as do the insurers. Therefore, not only did the administrative agency err when it failed to comply with NRS 233B.125's mandate for detailed findings and conclusions, but because the appeals officer's misunderstanding of the law prevented Poremba from presenting the required evidence to reopen his claim, we are unable to review the facts in this appeal. Accordingly, we must reverse and remand for an evidentiary hearing and subsequent order containing detailed findings of fact and conclusions of law as to whether Poremba meets the requirements of NRS 616C.390, and if so, how much of an offset may S&C claim based on the amount of settlement funds that Poremba used on reasonable living expenses, including but not limited to medical treatment, housing, and food for himself and his family.

## CONCLUSION[4]

Accordingly, the judgment of the district court is reversed, and we remand to the district court with instructions to remand to the appeals officer for a new hearing and determination, consistent with this opinion.

_____, J.
Cherry

We concur:

_____, J.
Douglas

_____, J.
Gibbons

---

[4]Poremba argued that the appeals officer improperly revived S&C's motion for summary judgment. Because we conclude both that *Chandler* does not prevent a claimant from exhausting his or her third-party settlement funds on reasonable living expenses and that the appeals officer's order must contain detailed factual findings and conclusions of law, we decline to address this issue.

SUPREME COURT
OF
NEVADA

(O) 1947A