133 Nev., Advance Opinion 2

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| WILLIAM POREMBA,<br>Appellant,<br>vs.<br>SOUTHERN NEVADA PAVING; AND<br>S&C CLAIMS SERVICES, INC.,<br>Respondents. | No. 66888<br><br>**FILED**<br><br>JAN 26 2017<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |

Petition for en banc reconsideration of a panel opinion in an appeal from a district court order denying a petition for judicial review in a workers' compensation matter. Eighth Judicial District Court, Clark County; Valorie J. Vega, Judge.

*Petition granted; reversed and remanded with instructions.*

Dunkley Law and Mark G. Losee and Matthew S. Dunkley, Henderson, for Appellant.

Lewis Brisbois Bisgaard & Smith, LLP, and Daniel L. Schwartz and Jeanne P. Bawa, Las Vegas, for Respondents.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, CHERRY, C.J.:

On April 7, 2016, a panel of this court issued an opinion reversing, remanding, and instructing the district court to remand the case to the appeals officer. After respondents petitioned for en banc reconsideration, we granted the petition. We now withdraw the April 7,

17-2862

2016, opinion and issue this opinion in its place. On en banc reconsideration, we again reverse, remand, and instruct the district court to remand to the appeals officer, but we instruct the appeals officer to conduct a hearing consistent with this opinion.

NRS 616C.390(1) sets forth the required findings that compel reopening of a workers' compensation claim, none of which include the right of an insurer to reimbursement from an injured workers' third-party recovery. NRS 616C.215(2)(a), however, provides that when an injured employee who receives workers' compensation also recovers damages from the responsible party, the amount of workers' compensation benefits must be reduced by the amount of the damages recovered. We concluded in *Employers Insurance Co. of Nevada v. Chandler*, 117 Nev. 421, 426, 23 P.3d 255, 258 (2001), that an insurer may refuse to pay additional funds via reopening a workers' compensation claim until the claimant demonstrates that he or she has exhausted any third-party settlement funds and that medical expenses are considered to be compensation that an insurer may withhold until the recovery amount has been exhausted.

In the case now before us, it appears that the appeals officer and the district court resolved the petition to reopen based upon whether Poremba exhausted his settlement funds on medical expenses. That is erroneous for two reasons. First, NRS 616C.390 does not require exhaustion or reimbursement as a condition precedent to reopening a workers' compensation claim. Second, insurers, although entitled to reimbursement, are only entitled to reimbursement from the portions of third-party recovery allocated to expenses within the scope of workers' compensation. Accordingly, we hold that (1) an administrative officer, or in this case an appeals officer, must first reopen a worker's compensation

claim based solely on the requirements contained within NRS 616C.390(1), then determine what, if any, reimbursement an insurer is entitled to before it must provide additional workers' compensation benefits; and (2) although an insurer may be entitled to reimbursement from the portion of settlement funds designated for expenses otherwise covered by workers' compensation, an insurer is not entitled to reimbursement from the portion of settlement funds designated to compensate the injured worker for items outside the definition of "compensation" in NRS 616A.090, such as past, present, and future pain and suffering.

## FACTS AND PROCEDURAL HISTORY

Appellant William Poremba worked for respondent Southern Nevada Paving as a construction driver. On July 22, 2005, in the course of his duty, Poremba was driving a truck when another driver struck the truck with his backhoe. Poremba suffered injuries to his head, neck, back, and knee. Poremba filed a workers' compensation claim, which Southern Nevada Paving, through respondent S&C Claims (collectively S&C), accepted. S&C eventually closed the claim, sending Poremba a letter with instructions on how to reopen the claim should his condition worsen.

Poremba also sued the backhoe driver and his employer. That lawsuit was settled on July 30, 2009, for $63,500, with a significant amount of that settlement paid directly to cover health-care providers' liens. Poremba personally received $34,631.51. He spent approximately $14,000 of the money he received on additional medical treatment. The settlement agreement, however, did not specify a structure as to how the funds were to be allocated.

Poremba attempted to return to work, but he was unable to do so. Additionally, his doctors instructed him not to go back to work. On

January 10, 2013,[1] Poremba sought to reopen his claim, but S&C denied his request. Poremba administratively appealed, and S&C filed a motion for summary judgment, arguing that our decision in *Chandler* precluded Poremba from reopening his claim because he spent settlement funds on expenses other than medical costs. After an evidentiary hearing in which the appeals officer prevented Poremba from introducing evidence about the potential changed circumstances surrounding his injuries, the appeals officer summarily granted S&C summary judgment, again denying Poremba's attempt to reopen his claim. Poremba petitioned the district court for judicial review. The district court denied the petition, and this appeal followed.

## DISCUSSION

Poremba asserts that the appeals officer erred in granting summary judgment because, legally, he is not required to prove that he spent his excess recovery on medical expenses and because factual issues exist as to whether his injury had worsened, necessitating additional compensation. S&C argues that *Chandler* "clearly stands for" the proposition that a claimant who receives a third-party settlement may not spend any of that money on home loans or family expenses and reopen his or her workers' compensation claim when his or her medical situation changes. S&C argues that the point is to prevent a double recovery, asserting that double recovery means simply to recover from two sources for the same injury. We disagree with S&C.

---

[1]Poremba previously attempted to reopen his claim just over a year prior to January 2013. NRS 616C.390 requires a claimant to wait for a year before a subsequent attempt to reopen, and Poremba complied.

This court's role in reviewing an administrative agency's decision is identical to that of the district court. *Elizondo v. Hood Mach., Inc.*, 129 Nev. 780, 784, 312 P.3d 479, 482 (2013). Although we defer to an agency's findings of fact, we review legal issues de novo, including matters of statutory interpretation. *Taylor v. State, Dep't of Health & Human Servs.*, 129 Nev. 928, 930, 314 P.3d 949, 951 (2013). We defer to an agency's interpretations of its governing statutes or regulations only if the interpretation "is within the language of the statute." *Id.* (internal quotations omitted).

Workers' compensation provides specific benefits while personal injury recoveries may be designed not only to pay for special damages, such as loss of earnings and medical expenses, but to compensate for general or noneconomic damages such as pain and suffering and emotional distress. The critical inquiry for determining insurer reimbursement is not how an injured worker spends settlement funds, but how those settlement funds are allocated for various damages. We hold that workers' compensation insurers are not entitled to reimbursement from the portion of third-party settlement funds that do not fall within the definition of compensation found in NRS 616A.090. Moreover, before an administrative officer may even consider reimbursement, the officer must first make a finding pursuant to NRS 616C.390 as to whether the worker's claim must be reopened.

*The administrative officer must make a finding pursuant to NRS 616C.390 before considering whether the insurer is entitled to any reimbursement*

Reimbursement rules notwithstanding, the sole requirements for a claimant to reopen a workers' compensation claim are contained within NRS 616C.390:

1. If an application to reopen a claim to increase or rearrange compensation is made in writing more than 1 year after the date on which the claim was closed, the insurer *shall* reopen the claim if:

(a) A change of circumstances warrants an increase or rearrangement of compensation during the life of the claimant;

(b) The primary cause of the change of circumstances is the injury for which the claim was originally made; and

(c) The application is accompanied by the certificate of a physician or a chiropractor showing a change of circumstances which would warrant an increase or rearrangement of compensation.

(Emphasis added.) NRS 616C.390 is silent as to funds that the claimant receives from any other source. *Id.*

Poremba waited the required year after his previous petition to reopen his claim. He submitted documentation from his treating physician stating that the original injury was the primary cause of the changed circumstances and that he needed an increase in compensation because of the changed circumstances. At the hearing, however, the appeals officer did not let Poremba testify or enter the documentation into evidence once she learned that Poremba spent settlement funds on nonmedical expenses. As a result, the appeals officer denied Poremba's petition.

Because the only factors required to compel reopening are found within NRS 616C.390 and the appeals officer failed to make any factual findings as to those factors, we must reverse and remand with instructions to remand to the appeals officer to determine whether

Poremba qualifies to reopen his claim based solely on NRS 616C.390 before she considers whether S&C is entitled to reimbursement.

*An insurer is not entitled to reimbursement from the portions of a third-party settlement that compensates an injured worker for anything outside the definition of compensation found in NRS 616A.090*

Nevada law allows an insurer to claim an offset when the claimant receives money from a lawsuit against the party responsible for the injury. NRS 616C.215(2). In pertinent part, NRS 616C.215(2) provides as follows:

> 2. When an employee receives an injury for which compensation is payable pursuant to the provisions of chapters 616A to 616D, inclusive, or chapter 617 of NRS and which was caused under circumstances creating a legal liability in some person, other than the employer or a person in the same employ, to pay damages in respect thereof:
>
> (a) The injured employee . . . may take proceedings against that person to recover damages, but the amount of the compensation the injured employee . . . [is] entitled to receive pursuant to the provisions of chapters 616A to 616D, inclusive, or chapter 617 of NRS, including any future compensation, must be reduced by the amount of the damages recovered . . . .
>
> (b) If the injured employee . . . receive[s] compensation pursuant to the provisions of chapters 616A to 616D, inclusive, or chapter 617 of NRS, the insurer . . . has a right of action against the person so liable to pay damages and is subrogated to the rights of the injured employee or of the employee's dependents to recover therefor.

For the purposes of workers' compensation insurance, however, "'[c]ompensation' means the money which is payable to an employee or to the dependents of the employee as provided for in chapters 616A to 616D,

inclusive, of NRS, and includes benefits for funerals, accident benefits and money for rehabilitative services." NRS 616A.090.

Accident benefits include "medical, surgical, hospital or other treatments, nursing, medicine, medical and surgical supplies, crutches and apparatuses, including prosthetic devices." NRS 616A.035(1). Accident benefits do not include exercise equipment, gym memberships, or in most cases, motor vehicle expenses. NRS 616A.035(3). Medical benefits are defined virtually identically to accident benefits. *See* NRS 617.130.

In 2001, this court concluded that an insurer may withhold payment of medical benefits until the claimant has exhausted any funds received from a third-party settlement. *Chandler*, 117 Nev. at 426, 23 P.3d at 258. Although *Chandler* did not limit how the claimant may exhaust the settlement funds, despite S&C's assertions to the contrary, the issue is not how the funds are exhausted, but which third-party claim for damages must be exhausted before a claimant may seek additional compensation. Accordingly, it is critical to allocate the settlement proceeds in order to determine the category for reimbursement to an insurer.

In *Chandler*, we held that "compensation," as specified in NRS 616C.215, included medical benefits. *Id.* It was not necessary to determine whether wage replacement, or any other type of specific payments, were to be excluded. We concluded that Chandler had to exhaust his settlement proceeds, but we did not decide how he had to exhaust those proceeds. *Id.*[2] We also did not discuss whether an insurer

---

[2]In 2007, we again held that compensation, for the purposes of workers' compensation laws, includes medical benefits. *Valdez v. Emp'rs*
*continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

is entitled to reimbursement from all settlement funds or only the portion of those funds designated for expenses within the definition of compensation as found in NRS 616A.090. We take the opportunity to do so today.

When a person is injured, he or she may sue the responsible party for payment to cover a variety of costs. Restatement (Second) of Torts § 924 (Am. Law Inst. 1979). While medical treatment is certainly among those costs, a plaintiff may also recover damages for pain and suffering, lost wages if the defendant's actions prevented the plaintiff from working, and harm to property. *Id.* These damages include and exceed the compensation as defined in NRS 616A.090.

S&C is correct that the policy behind NRS 616C.215 is to prevent a double recovery. *Chandler*, 117 Nev. at 426, 23 P.3d at 258. S&C, however, mischaracterizes double recovery. Double recovery is characterized based not on the event necessitating the compensation, but on the nature of the compensation provided. S&C cites to *Tobin v. Department of Labor & Industries*, 187 P.3d 780 (Wash. Ct. App. 2008), for the proposition that a claimant should not receive a double recovery as well. *Tobin*, however, explains that double recovery prevents the claimant from receiving compensation from the insurer and "retain[ing] the portion of damages which would include those same elements." 187 P.3d at 783 (internal quotations omitted). The *Tobin* court held that the insurer was only entitled to the portion of proceeds from the third-party suit that

---

...*continued*
*Ins. Co. of Nev.*, 123 Nev. 170, 177, 162 P.3d 148, 152 (2007). We did not limit the term "compensation" to medical benefits.

Supreme Court
OF
Nevada

(O) 1947A

9

correlate to the benefits it provided as a worker's compensation insurer. *Id.* at 784. The *Tobin* court continued:

> [The insurer]'s position would give it an "unjustified windfall" at [the claimant]'s expense. Under [the insurer]'s interpretation, it would be entitled to share in damages for which it has not provided and will never pay compensation. We do not interpret these statutes to require such a fundamentally unjust result. *[The insurer] did not, and will never, compensate [the claimant] for his pain and suffering, therefore it cannot be "reimbursed" from funds designated to compensate him for his pain and suffering.*

*Id.* (internal citations omitted) (emphasis added). Only one percent of Tobin's 1.4 million dollar settlement was allocated to future medical expenses, whereas over half of the settlement was allocated to pain and suffering. *Id.* at 781. The breakdown of Poremba's settlement, however, remains unclear and requires further fact-finding.

We agree with S&C insofar as a worker should not receive funds from two sources to pay for the same expenses. The worker, however, may spend settlement funds allocated for expenses beyond NRS 616A.090's definition of workers' compensation on those designated expenses without fear that the insurer will forever be able to deny or refuse to reopen claims for future expenses that are within the scope of workers' compensation.

We agree with the *Tobin* court and hold that because workers' compensation insurance never compensates the injured worker for pain and suffering, an insurer is not entitled to reimbursement from any of the settlement funds that were designated for pain and suffering, or any other expense beyond the scope of workers' compensation defined in NRS 616A.090. To deny a worker the opportunity to reopen his claims for

future workers' compensation benefits because he properly used the portion of his settlement money designated for pain and suffering to feed himself and his family is patently unjust and not supported by the statute.

Accordingly, we conclude that while S&C may be entitled to an offset based on the settlement funds allocated for future medical expenses or other expenses within the scope of workers' compensation, it is not entitled to recover any portion of the settlement funds allocated for expenses beyond NRS 616A.090's definition of compensation, such as pain and suffering. Because the record is silent as to how Poremba's settlement was to be allocated beyond the amount spent directly on then present medical expenses, the appeals officer must conduct an evidentiary hearing in which the parties may present evidence and call witnesses privy to the settlement proceedings so that the appeals officer can make a factual determination as to how the remainder of the settlement was to be allocated[3] and may only order reimbursement from the portion of the settlement allocated for expenses within the scope of workers' compensation. Going forward, parties can expressly designate how settlement funds are to be allocated so that future evidentiary hearings are not necessary.

Because Poremba's settlement likely covered expenses beyond the scope of compensation as found in NRS 616A.090, we must reverse the district court's denial of judicial review and instruct the district court to

---

[3]Specifically, the appeals officer must determine how much of the settlement was designated for:

- Medical expenses, both past and future;
- Wage loss, both past and future;
- Pain and suffering, past, present, and future; and
- Any other expense contemplated at the time of the settlement.

remand to the appeals officer for further proceedings consistent with this opinion.

*The administrative officer must issue a decision containing detailed findings of fact and conclusions of law*

Poremba argues that the district court erred when it found no improper procedure because Nevada statutes require the appeals officer's order to contain findings of fact and conclusions of law, and they were absent in the appeals officer's order. He further argues that without these findings, it is more difficult for a court to conduct a meaningful review. S&C does not refute Poremba's arguments, but merely suggests that if correct, the remedy would be a remand for a more detailed order. We conclude that after the appeals officer conducts the hearing to determine how Poremba's settlement was to be allocated, an order with detailed findings of fact and conclusions of law is required.

Without detailed factual findings and conclusions of law, this court cannot review the merits of an appeal; thus, administrative agencies are required to issue orders that contain factual findings and conclusions of law. NRS 233B.125. In pertinent part, the statute reads:

> A decision or order adverse to a party in a contested case *must* be in writing or stated in the record. . . . [A] final decision *must include findings of fact and conclusions of law, separately stated.* Findings of fact and decisions *must* be based upon substantial evidence. Findings of fact, if set forth in statutory language, *must* be accompanied by a concise and explicit statement of the underlying facts supporting the findings.[4]

---

[4]This statute was amended in 2015 and changed the standard from "substantial evidence" to "a preponderance of the evidence." 2015 Nev. Stat., ch. 160, § 7, at 708. This change does not affect this opinion.

 

*Id.* (emphases added). Each and every clause in this statute contains mandatory instruction for the appeals officer, leaving no room for discretion.

Here, not only did the appeals officer fail to issue detailed findings of fact or conclusions of law, the appeals officer precluded Poremba from introducing evidence supporting reopening his case after he admitted that he spent settlement money on expenses beyond medical treatment. This illustrates that the appeals officer had the same mistaken impression of the law as do the insurers. Therefore, not only did the appeals officer err when she failed to comply with NRS 233B.125's mandate for detailed findings and conclusions, but because she prevented Poremba from presenting the required evidence, pursuant to NRS 616C.390, to reopen his claim, we are unable to review the facts in this appeal. Accordingly, we must reverse and remand for a full administrative hearing and subsequent order containing detailed findings of fact and conclusions of law as to whether Poremba meets the requirements of NRS 616C.390 and, if so, how much of an offset S&C may claim based on the amount of settlement funds that were designed to compensate for expenses within NRS 616A.090's definition of compensation.

## CONCLUSION[5]

Accordingly, the judgment of the district court is reversed, and we remand to the district court with instructions to remand to the appeals officer for a new hearing and determination, consistent with this opinion.[6]

_____, C.J.
Cherry

We concur:

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

---

[5]Poremba argued that the appeals officer improperly revived S&C's motion for summary judgment. Because we conclude both that the insurer may not seek reimbursement from the portion of the settlement funds allocated for expenses beyond the limited scope of workers' compensation and that the appeals officer's order must contain detailed factual findings and conclusions of law, we decline to address this issue.

[6]The Honorable Lidia S. Stiglich, Justice, did not participate in the decision of this matter.