## McNEE *v.* McNEE
### No. 2689
July 6, 1925.                                    237 P. 534.

1. Appeal and Error—Final Determination of All Questions of Conflicting Evidence within Trial Court's Province, and Supreme Court Limited to Ascertaining if There is Evidence on Which Conclusions Could Reasonably Be Formed.

   In suit under Rev. Laws, sec. 2355, to annul a marriage for want of understanding due to intoxication, it was within province of trial court to finally determine all questions of conflicting evidence, and duty of supreme court is merely to ascertain if there is evidence upon which lower court could have reasonably formed its conclusion.

2. Appeal and Error—Evidence—Trial Court May Base Its Judgment on Testimony of One Witness against That of Several, and Appellate Court without Power to Enforce Contrary Opinion by Reversal.

   A trial court may base its judgment on testimony of one witness against that of several, if it is of sufficient weight to force conviction of truth to reasonable minds, and appellate court is without power to enforce a contrary opinion by reversing judgment.

3. Marriage—Evidence Held to Sustain Finding that Plaintiff, for Want of Understanding Due to Intoxication, Was Incapable of Assenting to Marriage Contract.

   In suit under Rev. Laws, sec. 2355, to annul marriage, evidence *held* to sustain finding that plaintiff, for want of understanding due to intoxication, was incapable of assenting to marriage contract, warranting annulment of marriage.

4. Marriage—Burden on Plaintiff to Prove by Satisfactory Evidence that He Was So Far Intoxicated as to Have Been Incapable of Giving Rational Assent.

   In suit under Rev. Laws, sec. 2355, to annul marriage for want of understanding due to intoxication, burden was on plaintiff to prove by clear and satisfactory evidence that he was so far intoxicated as to have been incapable of giving rational assent to obligations imposed.

5. Evidence — Plaintiff's Brothers and Business Associates Held Qualified to Express Opinion as to Mental Capacity to Understand Seriousness of Marriage Contract.

   In suit to annul marriage for want of understanding due to intoxication, plaintiff's brothers and business associates, *held* qualified to give their opinions as to whether plaintiff had mental capacity to understand seriousness of marriage contract.

See (1, 2) 4 C. J. sec. 2855, p. 883, n. 33; p. 885, n. 39; (3, 4) 38 C. J. sec. 131, p. 1354, n. 27; p. 1355, n. 29.; (5) 22 C. J. sec. 766, p. 678, n. 18.

Appeal from Second Judicial District Court, Washoe County; *Geo. A. Bartlett,* Judge.

Action by Frederick A. McNee against Sadie G. McNee to obtain annulment of marriage. From a judgment annulling marriage and order denying new trial, defendant appeals. **Affirmed.** (SANDERS, J., dissenting.)

*Cooke, French & Stoddard,* for Appellant:

Unsoundness of mind which will invalidate contract must exist at very time contract is made, regardless of condition before or after. Rev. Laws, 2355; Dunphy v. Dunphy, 119 P. 512.

Opinions of nonexperts as to drunkenness several hours after ceremony, without facts stated upon which opinions are based is no proof at all. Baughman v. Baughman, 4 P. 1006.

Burden of proof is on plaintiff to prove extent of incapacity. 29 Cyc. 913. Presumption is for legality of contract. Evidence to repel must be satisfactory. 18 R. C. L. 427, Waughop v. Waughop, 143 P. 444. Presumption of legality of marriage is the strongest presumption in the law. 18 R. C. L. 416.

Mere weakness of mind or partial intoxication is not enough to annul marriage. Party must be incapable of assent. Rev. Laws, 2355; 19 C. J. 814; Party must be "deprived of reason." 26 Cyc. 844; Prine v. Prine, 34 L. R. A. 91.

*Hoyt, Norcross, Cheney & Hoyt,* for Respondent:

We have no serious controversy with counsel in respect to law governing cases of this kind, but no two cases are precisely alike and it is province of trial court to consider all facts to determine whether party was in possession of sufficient mentality to enter into solemn and binding obligation. Our statute specifies as degree of incapacity, "want of understanding." Rev. Laws, 2355.

Trial court may conclude from all facts that party was incapable, though his demeanor at time of ceremony did not so indicate to witnesses. True test is whether party was capable of understanding obligations assumed by marriage. Findings of trial court are overthrown on appeal only when they totally lack support of substantial

evidence. Conflicts of testimony are deemed to be resolved in court below. Dunphy v. Dunphy, 119 P. 512.

## OPINION

By the Court, Ducker, J.:

This is an appeal from an action instituted to obtain an annulment of marriage. The complaint states two causes of action. In the first it is alleged: That the plaintiff and defendant, on or about the 21st day of April, 1921, at the town of Ingersoll, Province of Ontario, Dominion of Canada, entered into a form of marriage, and were by reason of said form declared to be husband and wife; that at the time of entering into said form of marriage the plaintiff, by reason of want of understanding, occasioned by intoxication, was incapable of assenting thereto. In the second cause of action it is alleged: That at the time of entering into said form of marriage and immediately prior thereto, the defendant, taking advantage of the plaintiff's condition and want of understanding, did then and there fraudulently persuade plaintiff to enter into said form of marriage for the purpose of obtaining from plaintiff or his family a pecuniary advantage. It is alleged that there has been no subsequent cohabitation of plaintiff and defendant since entering into said form of marriage.

The allegations set forth in the complaint as grounds for annulment, with the exception of the fact of no cohabitation, are denied in the answer specifically and by the statement of facts, which, in effect constitute denials.

The action was tried before the court without a jury. Plaintiff prevailed, and a judgment was rendered on the 20th day of September, 1924, annulling the marriage, and declaring it to be wholly void from the date of judgment. Defendant has appealed from the judgment and the order denying the motion for a new trial.

The section of our statute which authorizes an action of this kind reads:

"When either of the parties to a marriage, for want of age or understanding, shall be incapable of assenting

thereto, or when fraud shall have been proved, and there shall have been no subsequent voluntary cohabitation of the parties, the marriage shall be void from the time its nullity shall be declared by a court of competent authority." Section 2355, Rev. Laws, vol. 1.

No evidence was introduced in support of the cause of action based on fraudulent persuasion, the plaintiff confining his proof to his alleged state of intoxication at the time of the marriage. Upon this phase of the case the court found as follows:

"That at the time of entering into said form of marriage plaintiff, by reason of want of understanding occasioned by intoxication, was incapable of assenting thereto."

The court further found:

"That since the entering into said form of marriage there has been no subsequent cohabitation of plaintiff and defendant."

Upon the latter finding there is no conflict of evidence whatever. It was conclusively proven that there was no cohabitation after the marriage. But as to the former finding the evidence is conflicting. Counsel for appellant contend that there is no substantial evidence to support the finding of the court. This is the only question presented for determination. We need not undertake to define the degree of intoxication of a party to a marriage which will authorize a judgment annulling it. The test appears in the statute, which declares:

"When either of the parties to a marriage, for want of * * * understanding, shall be incapable of assenting thereto. * * *"

We assume that the trial judge applied this test to the evidence before him in reaching the conclusion that the marriage was void by reason of the degree of plaintiff's intoxication at the time the ceremony was performed.

1. We have carefully considered all of the evidence bearing upon the issue presented, and are of the opinion that there is substantial evidence to justify the court in making the finding and rendering the judgment annulling the marriage. There is evidence which would have

justified a contrary conclusion, but it was within the province of the lower court to finally determine all questions of conflicting evidence. Our duty goes no further than to ascertain if there is evidence upon which the lower court could have reasonably formed the conclusion that the plaintiff, for want of understanding due to intoxication, was incapable of assenting to the marriage contract. As stated in Dunphy v. Dunphy, 161 Cal. 380, 119 P. 512, 38 L. R. A. (N. S.) 818, Ann. Cas. 1913B, 1230:

"We are not empowered to determine, as an original question, whether the plaintiff was or was not of unsound mind. Our duty begins and ends with the inquiry whether the trial court had before it evidence upon which an unprejudiced mind might reasonably have reached the conclusion which was reached. Conflicts of testimony are deemed to have been finally resolved in the court below."

Our own decisions are in accord with that statement.

We deem it unnecessary to state more than a brief summary of the evidence, which we regard as sufficient basis for the judgment of annulment. To state the testimony of defendant would prolong this opinion and serve no useful purpose, for it is conceded that it supports her defense that plaintiff was not intoxicated at the time of the marriage. It is not, however, as we have already indicated, of such strength to weaken plaintiff's evidence to the extent that the trial court was not entitled to reasonably consider it worthy of belief, and to base its judgment upon it.

The parties resided in London, Ontario, and had been keeping company for several months prior to their marriage. On the night before their marriage they were together at the London Hunt Club near London until about 1:30 a. m., April 22, 1921, when they returned to London, and thence to the town of Ingersoll, where they were married at about noon of that day. Ingersoll is about 18 miles from London. They went in an automobile from London to Ingersoll and back to London after the marriage, the plaintiff driving the car going

and returning. On the same day, after a conference with his brothers and an attorney, plaintiff left London for New York in company with one of his brothers. The plaintiff and defendant did not meet again until in the courtroom at Reno at the time of the trial. Plaintiff had been employed by his brothers as a bookkeeper for some time prior to the marriage. Plaintiff's version of his recollection of the marriage, and the incidents prior thereto, is substantially as follows: From the time he first met defendant until the day of his marriage, he was drinking every night, except on three occasions. Practically every night he became completely intoxicated in her company. On the evening of the 21st of April they went to the London Hunt Club in an auto and sat in the driveway of the club and drank a bottle of Scotch whisky. They both became intoxicated, and plaintiff remembered little more until after his marriage. He had a very dim recollection of going through a marriage ceremony. He had no intention of getting married, and had never asked defendant to marry him. On cross-examination he testified that he had no recollection of incidents on the night before the marriage after about half past 10 o'clock; that he had no recollection of how he happened to go to Ingersoll, or who suggested it; and had no recollection of how he found the minister's house or when he left there. He could not remember getting the marriage license.

According to the deposition of the steward of the London Hunt and Country Club, he saw the plaintiff and defendant at the club on the night of the 21st of April, 1921, and drove them to London. The steward testified:

"He (plaintiff) was drunk. He acted foolish. He was asleep and woke up dazed and stupid. The defendant asked me to drive them to town. She said if I didn't she wasn't going to ride with him. I drove them in to town, and left them at a corner of Adelaide and King streets about 1:30 a. m. the 22d of April, 1921. He was still under the influence. A day or so afterwards I saw the paper; and the defendant called me up and asked me

if I remembered the date, and could I say the plaintiff was not drunk. I said I would say he was tight."

In reply to cross-interrogatories, the steward said:

"He was very drunk early when I got in at 12:30 a. m. He appeared stupid and dazed, and he was still under the influence at 1:30 a. m. when I left him. He smelt. strongly of liquor."

In addition to the deposition of the steward, plaintiff introduced in evidence the depositions of his three brothers, James A. McNee, Ernest D. McNee, and Elmer W. McNee, the deposition of John Wesley Cunningham, an accountant for the McNee brothers, and the deposition of Newenham Parke Graydon, a solicitor. Each of the witnesses saw the plaintiff on the day of the marriage shortly thereafter. In part, James McNee testified:

"He (plaintiff) came into my office in London, 381 Clarence street, about 12:30 noon. His appearance indicated he had been drinking heavily. He looked stupid, and smelt strongly of liquor. At periods he drank heavily. Took it occasionally and at times to excess, and acted very foolish when under its influence. I don't think he was in a condition to realize the seriousness of the contract he entered into. He went home, 370 Queens Avenue, London, and from there took train in a few hours for New York. My brother Elmer accompanied him. I didn't think he was in a fit state to travel alone."

Asked on cross-examination to state the facts on which he based his opinion that plaintiff was not in a mental condition to comprehend a matter of the seriousness of entering into a marriage contract, the witness replied: "Had silly expression, acted as if stupid, and reeked with liquor." The witness gave his opinion that the plaintiff had been under the influence of liquor for several hours.

Ernest D. McNee saw the plaintiff at about 12:30 p. m. on the day of the marriage. In substance he testified:

"He (plaintiff) was simply intoxicated to the extent of not knowing what he was doing. He smelt strongly of liquor and was stupid. At periods he drank to excess

for a long time back, drank to excess at intervals. He was in a condition in which he could not comprehend the seriousness of this contract or any other. Elmer McNee accompanied my brother, the plaintiff, to New York, because he was in no condition to travel alone. The plaintiff never indicated any intention of marrying to any one, and made absolutely no preparations for same, nor did he have the necessary equipment by way of wearing apparel."

On cross-examination the witness was asked to state the facts upon which he based his opinion that his brother was not in a mental condition to comprehend the seriousness of entering into marriage, and replied:

"I did not consider he was in a mental condition to understand or comprehend what he was doing because he was stupid from drink."

The witness testified further:

"I saw him the day before his marriage some time during the day. From his condition when I saw him after his marriage he must have been intoxicated at the time of the marriage."

Elmer McNee saw the plaintiff on the day of the marriage at about 1:30 p. m. In substance, he testified:

"He was in a drunken condition for several hours, by his appearance. He drank to excess, and became uncontrollable at intervals. He went to New York on the train leaving London at 5 p. m. I accompanied him, as he was unable to look after himself. He proceeded under legal advice. From his condition at the time I saw him I would judge he had been in that state for some time, including the marriage. He never intimated to me or any one that (he) contemplated marriage, and made no preparations for same, nor did not have clothes or even any bag suitable for that purpose."

He was asked if, in his opinion, the plaintiff was in such mental condition as to be unable to comprehend the seriousness of entering into a marriage contract, and answered:

"He would not know what he was doing or understand the seriousness of any contract."

During the cross-examination the witness said:

"Periodically he drank to excess. He was stupid and dopey, and reeked of liquor. He.did not seem to know what he was doing. I went with him to New York. I was not present at the marriage ceremony. The plaintiff was apparently under the influence of liquor when he separated personally from the defendant."

Newenham Parke Graydon had known the plaintiff for ten years. He saw him at 370 Queens Avenue, London, on the 22d day of April, 1921, at about 2 p. m., where he had been called for an interview. Concerning plaintiff's condition, the witness testified:

"He was considerably under the influence of liquor— was stupid and smelt strongly of liquor, and had the appearance of having been on a spree and in that condition for some time previously. In my opinion at that time he was not in a condition to comprehend the seriousness of a marriage ceremony."

The witness also stated:

"He went to New York about 5 p. m., accompanied by his brother Elmer."

In reply to the question whether, in his opinion, the plaintiff was in a condition to safely travel alone, the witness said:

"No; I advised him to go, and one of the family to go with him to look after him in his condition."

On cross-examination, when asked to state the facts upon which he based his opinion that the plaintiff was not in a condition to travel safely alone, the witness said:

"He was under the influence of liquor then—was stupid—smelt strongly of liquor, and did not seem capable of looking after himself. He was steeped in liquor."

John Wesley Cunningham had known the plaintiff for 23 years. He saw him at about 12:30 p. m. on the 22d. The witness stated:

"He was plainly intoxicated—stupid and silly; he appeared as if he had been in that condition for some time. He said: 'Mr. Cunningham, I am married.' I replied: 'Fred you are silly; you don't know what you are talking about.' "

Asked to state his opinion as to the condition of plaintiff when he saw him the witness replied:

"The usual condition of a man who had been drinking heavily for some time. He did not seem to have full possession of his faculties; seemed to be confused in what he was saying and doing."

On cross-examination the witness was asked to state the facts upon which he had based his opinion, and replied:

"From his stupid, befuddled appearance, and he reeked of liquor. Quite different from his appearance and conduct on ordinary occasions; from his appearance; from the smell of liquor on him, and from the stupid manner in which he acted."

2, 3. Such, in substance, constitutes plaintiff's evidence. According to his testimony he was so far gone in drunkenness at the wedding as to have no rational conception of what he was doing. He had, he said, a very dim recollection of going through a marriage ceremony. It was just a haze. If his testimony was true, he did not have the understanding required by law to enter into a valid marriage. Whether it was true or not was for the trial court to determine after a fair and candid consideration of all the evidence bearing on the point. A trial court may base its judgment upon the testimony of one witness against the testimony of a number of witnesses, if it is of sufficient weight to force a conviction of truth to a reasonable mind, and the appellate court is without power to enforce a contrary opinion by reversing the judgment.

Aside from plaintiff's testimony, which also disclosed an almost constant drinking to excess during the time he was keeping company with the defendant, there is the evidence of his witnesses, which the trial court could properly consider, that he was very drunk during the night preceding the day of the marriage and very soon after it. The minister stated that the marriage ceremony was performed about noon of the 22d. About an hour afterwards he was seen by the brothers, the accountant, and, a little later, by the solicitor. If their testimony is worthy of belief, he was then in a drunken,

stupid condition, and smelt strongly of liquor. The steward of the London Hunt Club, who may be regarded as a disinterested witness, testified that he was in the same condition when he, at defendant's request, drove them from the club to London, and left them there at 1:30 a. m. "He was stupid and dazed," the steward said, "and was still under the influence at 1:30 a. m. when I left him. He smelt strongly of liquor." Defendant's counsel contend that this evidence is too remote from the time of the marriage to be of any consequence. They argue that he could have been very drunk on these occasions and perfectly sober at the marriage. The inference is, of course, a legitimate one, but a contrary inference may also be indulged.

4, 5. It is true that such evidence standing alone would have been insufficient to sustain the action of the trial court, the burden being on plaintiff to prove by clear and satisfactory evidence that he was so far intoxicated when he went through the marriage ceremony as to have been incapable of giving a rational assent to the obligations imposed. But it does not follow that evidence of extreme drunkenness shortly before and shortly after the marriage was not material to be considered by the trial court in connection with the evidence of intoxication at the time. We have no means of knowing what, if any, weight the trial court gave to the statements of plaintiff's witnesses to the effect that in their opinions he did not have the mental capacity to understand the seriousness of the marriage contract. But we are not prepared to say as a matter of law that they should have been rejected, especially the opinions of the three brothers. Their close relation to him and business connection with him, their knowledge of his periodical drinking excesses, their observation of his mental condition shortly after the marriage, qualified them to give their opinions on the subject, which the trial judge could accord such weight as he thought they deserved, having due regard, of course, for the relationship existing between them and plaintiff, which might predispose them in his favor.

We do not consider it necessary to comment on the many unfavorable inferences argued by counsel from plaintiff's evidence. These were . conclusively resolved against defendant by the judgment of the trial court, which we hold is supported by substantial evidence.

The judgment is affirmed.

COLEMAN, C. J.: I concur.

SANDERS, J.: I dissent.