BEATRIZ S. IRVING, Appellant, *v.*
GILBERT J. IRVING, Respondent.

No. 44142

May 25, 2006

134 P.3d 718

*Mont E. Tanner*, Las Vegas, for Appellant.

*Gilbert J. Irving*, Las Vegas, in Proper Person.

Before Maupin, Gibbons and Hardesty, JJ.

## OPINION

By the Court, Hardesty, J.:

In this case of first impression, we address the level of proof required to establish fraud to obtain an annulment under NRS 125.340(1). We conclude that fraud must be proved by clear and convincing evidence. Since, in this case, the record does not contain substantial evidence supporting a finding of fraud by clear and convincing evidence, we reverse the district court's order annulling the parties' marriage.

### FACTS

After meeting through a pen pal service, appellant Beatriz S. Irving, who was living in the Philippines, and respondent Gilbert J. Irving, who was living in the United States, exchanged love letters and telephone calls for nearly ten years. Twice, Gilbert visited Beatriz in the Philippines. After the first visit, Beatriz told Gilbert that she had been pregnant with his child but that she had had a miscarriage. In 2002, Gilbert obtained government approval for Beatriz to immigrate to the United States. The parties married shortly thereafter.

From June 2002 to October 2002, the parties lived together as husband and wife. During this time, Beatriz never became pregnant despite the couple's continued efforts. In October 2002, Beatriz was diagnosed with tuberculosis and moved out of Gilbert's residence, in part because Gilbert was concerned that the disease was contagious. In November 2002, Gilbert filed a complaint for annulment, alleging that his consent to marriage was induced by fraud because Beatriz had misrepresented that she wanted to conceive his child.

After a bench trial, the district court noted that the case was "very close" but ordered an annulment for fraud based on its findings that Gilbert had relied on Beatriz's representations that she would conceive his child and that there were no "allegations of the normal reasons as to why parties separate." This appeal followed.

## DISCUSSION

*Burden of proof: fraud*

[Headnote 1]

In determining that Gilbert was entitled to an annulment on the basis of fraud under NRS 125.340(1), the district court never stated the evidentiary burden of proof that Gilbert was required to satisfy. Beatriz argues that Gilbert was required to prove fraud by clear and convincing evidence and failed to meet that burden. We agree.

NRS 125.340(1) provides that, "[i]f the consent of either party was obtained by fraud *and fraud has been proved*, the marriage shall be void from the time its nullity shall be declared by a court of competent authority." (Emphasis added.) The level of proof required to establish fraud for an annulment under NRS 125.340(1) is an issue of first impression.

Because the interpretation of a statute is a question of law, the proper standard of review is de novo.[1] This court follows the plain meaning of a statute absent an ambiguity.[2] Whether a statute is deemed ambiguous depends upon whether the statute's language is susceptible to two or more reasonable interpretations.[3] When a statute is ambiguous, we look to the Legislature's intent in interpreting the statute.[4] Legislative intent may be deduced by reason and public policy.[5]

NRS 125.340(1) is ambiguous because the language "and fraud has been proved" is susceptible to two or more reasonable interpretations concerning the burden of proof required to prove fraud. One reasonable interpretation is that fraud must be proved by clear and convincing evidence as in a traditional tort cause of action for fraud.[6] However, another reasonable interpretation is that fraud can

---

[1]*California Commercial v. Amedeo Vegas I*, 119 Nev. 143, 145, 67 P.3d 328, 330 (2003).

[2]*White v. Warden*, 96 Nev. 634, 636, 614 P.2d 536, 537 (1980).

[3]*Clark Cty. Educ. Ass'n v. Clark Cty. Sch. Dist.*, 122 Nev. 337, 345, 131 P.3d 5, 10 (2006).

[4]*Id.*

[5]*Id.* (quoting *State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004)).

[6]*Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 110-11, 825 P.2d 588, 592 (1992) ("A plaintiff has the burden of proving *each* element of fraud claim by clear and convincing evidence."); *see also Lubbe v. Barba*, 91 Nev. 596, 598, 540 P.2d 115, 117 (1975).

However, NRS 125.340 was enacted in 1861, which tends to negate an argument that the term "fraud" as used in the statute is unambiguous since much of Nevada's case law concerning fraud was developed after 1861.

be established by a preponderance of the evidence, the general civil standard.[7]

The legislative history of NRS 125.340(1) is silent with respect to the burden of proof necessary to show fraud. In determining legislative intent, reason and public policy support the conclusion that fraud must be proved by clear and convincing evidence to obtain an annulment. This court already requires clear and satisfactory evidence from a party seeking an annulment for want of understanding due to intoxication.[8] Similarly, this court requires clear and convincing evidence to prove the tort of fraud.[9] Moreover, "[i]n Nevada, throughout the United States, and in those parts of the world having their roots in the English Common Law, there is a strong public policy favoring marriage."[10] Because of the public policy in favor of marriage, courts will generally not annul a marriage absent clear and convincing evidence.[11]

Thus, we conclude that public policy in favor of marriage and against annulment, and the burden of proof established by this court in other annulment proceedings, compels a clear and convincing burden in annulments based on fraud.

---

[7]*Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1, 13-14, 62 P.3d 720, 729 (2003) (approving proof of fraud in the context of breaches of fiduciary duty by a preponderance of the evidence).

[8]*McNee v. McNee*, 49 Nev. 90, 100, 237 P. 534, 537-38 (1925) ("[T]he burden [is] on plaintiff to prove by clear and satisfactory evidence that he was so far intoxicated when he went through the marriage ceremony as to have been incapable of giving a rational assent to the obligations imposed.").

[9]*Bulbman*, 108 Nev. at 110-11, 825 P.2d at 592; *Lubbe*, 91 Nev. at 598, 540 P.2d at 117.

[10]*Ponina v. Leland*, 85 Nev. 263, 269, 454 P.2d 16, 20 (1969).

[11]*See Worthington v. Worthington*, 352 S.W.2d 80, 82 (Ark. 1961) ("The law of Oklahoma and the law of Arkansas coincide on the necessity of the person seeking to annul the marriage to offer strong, clear, and convincing proof before annulment will be decreed."); *Strom v. Strom*, 75 N.W.2d 750, 752 (N.D. 1956) (stating that in order to obtain an annulment for fraud, the fraud must be clearly shown, which is a heavy burden to carry); *Elliott v. James*, 977 P.2d 727, 730 (Alaska 1999) (stating that courts are generally reluctant to annul a marriage for fraud and that the party seeking such an annulment must prove fraud by clear and convincing evidence); *Wronald S.B. v. Irina P.B.*, 771 A.2d 978, 980 (Del. 2000) (stating that because of the public policy discouraging marital dissolution, an annulment for fraud should not be granted absent the most convincing proof); *Masters v. Masters*, 108 N.W.2d 674, 679 (Wis. 1961) ("Because of these [policy] considerations courts should be hesitant to annul marriages on the ground of fraud perpetrated upon one of the parties by the other, unless thoroughly convinced that the defrauded party would not have entered into the marriage contract except for such fraud."); *see also* 4 Am. Jur. 2d *Annulment of Marriage* § 11 (1995).

This court reviews annulment proceedings for an abuse of discretion.[12] Thus, a district court's decision to grant an annulment will not be disturbed on appeal if it is supported by substantial evidence.[13] "Substantial evidence is that which a sensible person may accept as adequate to sustain a judgment."[14]

No substantial evidence supports a finding of fraud by clear and convincing evidence in this case. At trial, Beatriz testified that she was pregnant with Gilbert's child in 1996 but that she had a miscarriage shortly after conception. Beatriz also testified that she is capable of conceiving a child but that it likely proved difficult because of her age at the time (forty-two). Gilbert testified that even if Beatriz was infertile, he still would have married her. Moreover, Gilbert testified that Beatriz never told him that she could not conceive a child, and that he does not know whether or not she can. Lastly, Gilbert testified that having a child with Beatriz was not his primary reason for marrying her and that he was unsure whether he specifically requested a child from Beatriz in any of the letters exchanged between the parties.

Gilbert failed to provide any evidence that Beatriz knew, before marriage, that she could not bear children. Both parties acknowledge that during their brief marriage they had regular unprotected sexual intercourse in attempt to conceive a child. Despite the district court's finding that it did not hear any "normal reasons" why the parties separated, Beatriz testified that she was unhappy in the marriage because Gilbert was insensitive to the difficulties she experienced in adjusting to the cultural differences between the Philippines and the United States. Finally, Beatriz testified that she moved out, at least in part, because Gilbert was afraid that her tuberculosis was contagious.

Based on the lack of substantial evidence to support a finding of fraud, we conclude that the district court abused its discretion in ordering a decree of annulment on the grounds of fraud.

## CONCLUSION

A party seeking an annulment for fraud under NRS 125.340(1) must prove fraud by clear and convincing evidence. The district court abused its discretion in ordering the parties' marriage to be annulled since the record contains no substantial evidence of fraud. Accordingly, we reverse the district court's order.

MAUPIN and GIBBONS, JJ., concur.

---

[12]*Williams v. Williams*, 120 Nev. 559, 566-67, 97 P.3d 1124, 1129 (2004).

[13]*Id.* at 566, 97 P.3d at 1129.

[14]*Id.*