133 Nev., Advance Opinion 69

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| JENNIFER ELISE GORDON,<br>Appellant,<br>vs.<br>MATTHEW ROBERT GEIGER,<br>Respondent. | No. 67955<br><br>**FILED**<br>SEP 27 2017<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |

Appeal from a post-divorce decree district court order modifying a child custody matter. Eighth Judicial District Court, Family Court Division, Clark County; Department T.[1]

*Reversed and remanded.*

Greenberg Traurig, LLP, and Tami D. Cowden and Moorea L. Katz, Las Vegas,
for Appellant.

Kemp Jones & Coulthard, LLP, and Eric M. Pepperman, Las Vegas,
for Respondent.

BEFORE THE COURT EN BANC.[2]

*OPINION*

By the Court, DOUGLAS, J.:

In this case, we examine a district court's sua sponte order permanently increasing respondent's visitation with the parties' minor

---

[1]The Honorable Gayle Nathan, District Judge, presided over the hearing where custody was modified, and the Honorable Lisa Brown, District Judge, entered the written order and denied reconsideration.

[2]The Honorable Ron D. Parraguirre, Justice, did not participate in the decision of this matter.

17-32848

children. The district court based its order on unrecorded interviews the judge conducted independently with the children and an unsubstantiated Child Protective Services (CPS) report that was not admitted into evidence.

We conclude that appellant's due process rights were violated when the district court changed the terms of custody without sufficient notice to appellant. Accordingly, we reverse the district court's order modifying child custody and remand this matter for further proceedings.

We further take this opportunity to provide necessary guidance for when the district court wants to interview a child witness. We clarify that such interviews must be recorded and must comply with the Uniform Child Witness Testimony by Alternative Methods Act, set forth in NRS 50.500 *et seq.*

### FACTS AND PROCEDURAL HISTORY

Appellant Jennifer Gordon and respondent Matthew Geiger divorced in 2011. Pursuant to their divorce decree, both were awarded joint legal custody of their two minor children; Gordon was awarded primary physical custody, and Geiger received limited visitation.

In 2011, before the district court entered the decree of divorce, the judge interviewed the parties' children with the children's guardian ad litem present. A return hearing immediately followed. Pursuant to the court minutes from the return hearing, the court ordered that Gordon's boyfriend was to not physically discipline the children in any way. The district court never entered a written order on this issue.

In early 2014, the district court entered a written order modifying Geiger's visitation to every other weekend. Subsequently in July, Geiger was arrested and incarcerated for 23 days due to an

outstanding warrant for parole violations. Gordon then filed a motion for an order to show cause, alleging that Geiger violated court orders concerning custody and child support. Based on Geiger's parole violation, among other reasons, Gordon also filed a separate motion to modify custody, which requested sole legal and physical custody, and removal of Geiger's visitation.

At the following hearing on August 28, 2014, the district court stated it was inclined to interview the parties' children, to which Geiger and pro se Gordon agreed. The district court then set an evidentiary hearing for October 9, 2014, to address Gordon's request for an order to show cause and to particularly discern the reason for the issuance of Geiger's warrant.

In September, the district court judge interviewed the minor children individually and off the record, with only the court clerk and court marshal present during the interviews.

At the October evidentiary hearing, the district court clarified that it set this hearing to hear from Geiger's probation officer in order to understand why a warrant was issued for his arrest. Accordingly, Geiger's probation officer took the stand and testified to the probation conditions Geiger allegedly violated and indicated that Gordon was not responsible for the issuance of Geiger's warrant. On cross-examination, the probation officer testified that he did not have any proof that Geiger was aware of the changes to the terms of his probation.

Following the probation officer's testimony, Gordon took the stand. The district court recognized Gordon's pending motion to modify custody, but clarified that she could testify in a limited capacity as to her interaction with Geiger's probation officer, which she did. Geiger's counsel

 

further acknowledged that Gordon was testifying to this limited issue. The district court then addressed Geiger's child support arrears, and Geiger took the stand to testify about financial matters.

Following Geiger's testimony concerning child support, the court made its ruling and denied Gordon's motion for sole legal custody, finding that Geiger did not know that he violated the terms of his probation and lacked notice of his warrant. Although the district court had already announced its decision, it allowed closing arguments. After arguments by the parties, the court made additional rulings concerning the parties' failure to communicate and the minor child's participation in a traveling band.

The judge then addressed the unrecorded interview she conducted with the parties' children. According to the judge, the youngest child was not as forthcoming in his interview. However, the eldest child revealed that he liked the current custody schedule, and thus, the court found that he was not distressed by the arrangement. Then the judge informed the parties that the eldest child also told her that Gordon's boyfriend would punch him as a form of discipline. Despite Gordon's denial of this allegation, the judge stated that she believed the child's testimony due to his detailed narrative. The court also based its ruling on an unsubstantiated CPS report, which was not authenticated by a CPS agent, admitted into evidence, or provided to the parties. In response, Geiger's counsel asked the court to consider issuing an order to protect the children from Gordon's boyfriend. The court granted the request and also ordered the parties to take classes concerning appropriate child discipline.

 

As the evidentiary hearing came to a conclusion, Geiger's counsel orally requested expansion of Geiger's visitation, despite the fact that he never previously requested custody modification in writing or otherwise. Geiger's counsel also stated that even a temporary time-share change until the parties completed the discipline classes would suffice. The court declined counsel's request and instead sua sponte ordered a permanent change in the parties' visitation schedule. Although Gordon retained physical custody during the week, the court expanded Geiger's visitation schedule to the first four weekends of each month and awarded Gordon every fifth weekend of the month where applicable. The court further ruled that Gordon could plan a maximum of four weekend trips a year with the children if she gave Geiger sufficient notice. Thus, the district court ultimately decreased Gordon's weekend custodial time with the children to a maximum of eight weekends per year and increased Geiger's visitation to the remaining weekends. The district court based its order on the unrecorded child interviews and the unsubstantiated CPS report. The evidentiary hearing concluded immediately following the court's sua sponte order. The district court subsequently entered a written order reflecting the new visitation schedule.

In response to the district court's order, Gordon filed a motion for reconsideration, a new trial, or to amend or set aside a judgment, which the district court denied. This appeal followed.

## DISCUSSION

Gordon argues that the district court erred when it sua sponte ordered a permanent increase in Geiger's visitation and a reduction of her custodial time. In particular, Gordon argues that this sua sponte order

violated not only her due process rights, but also violated statutory law.[3] We agree.

This court will not disturb the district court's determination of child custody, including visitation schedules, absent an abuse of discretion. *Rivero v. Rivero*, 125 Nev. 410, 428, 216 P.3d 213, 226 (2009). However, the district court's findings must be supported with substantial evidence. *Id.* "Substantial evidence is evidence that a reasonable person may accept as adequate to sustain a judgment." *Id.* (internal quotation marks omitted).

*Due process*

"[D]ue process of law [is] guaranteed by the Fourteenth Amendment of the United States Constitution and Article 1, Section 8(5) . . . of the Nevada Constitution." *Rico v. Rodriguez*, 121 Nev. 695, 702-03, 120 P.3d 812, 817 (2005). Due process protects certain substantial and fundamental rights, including the interest parents have in the custody of their children. *Id.* at 704, 120 P.3d at 818. Further, due process demands notice before such a right is affected. *Wiese v. Granata*, 110 Nev. 1410, 1412, 887 P.2d 744, 745 (1994). Accordingly, a "party threatened with loss of parental rights must be given opportunity to disprove evidence presented." *Wallace v. Wallace*, 112 Nev. 1015, 1020, 922 P.2d 541, 544 (1996) (citing *Wiese*, 110 Nev. at 1413, 887 P.2d at 746).

---

[3]We recognize Geiger's argument that Gordon waived the challenges she now asserts on appeal by stipulating to the children's interviews and by failing to object to the district court's review of the CPS records. However, this court may address constitutional issues sua sponte. *In re Guardianship of L.S. & H.S.*, 120 Nev. 157, 166 n.24, 87 P.3d 521, 526 n.24 (2004).

Here, a permanent change to Geiger's visitation affects Gordon's fundamental right concerning the custody of their children. Gordon never received notice that Geiger would be requesting increased visitation at the evidentiary hearing, and she was not afforded the opportunity to be heard and rebut the evidence upon which the district court relied.[4] Therefore, the district court's sua sponte order, which in effect granted Geiger's oral request for a change in visitation at the evidentiary hearing, violated due process.[5]

Moreover, the district court's findings are not supported by substantial evidence due to the fact that the court relied upon the unrecorded child interviews and the unsubstantiated CPS report, neither of which were admitted into evidence. Therefore, without this evidence in the record, which was the basis for the district court's sua sponte order, we must reverse.

On remand, the district court must allow the parties the opportunity to demonstrate whether a modification to the existing custodial and visitation schedule is warranted. When modifying primary

---

[4]Gordon only offered limited evidence at the evidentiary hearing, which addressed Geiger's arrest and child support arrearages. Geiger did not offer any exhibits as evidence.

[5]We note that any violation of the 2011 minute order prohibiting Gordon's boyfriend from physically disciplining the children could not justify the district court's decision to increase Geiger's visitation at the evidentiary hearing. *See Div. of Child & Family Servs. v. Eighth Judicial Dist. Court*, 120 Nev. 445, 451, 92 P.3d 1239, 1243 (2004) (stating that "a [c]ourt's oral pronouncement from the bench, the clerk's minute order, and even an unfiled written order are ineffective for *any purpose*") (internal quotation marks omitted).

physical custody, the court must determine whether there is a sufficient showing of a substantial change in circumstances that affects the children's welfare, such that it is in the children's best interests to modify the existing visitation arrangement. *See Ellis v. Carucci*, 123 Nev. 145, 150, 161 P.3d 239, 242 (2007) (establishing this two-pronged test for modifications of primary physical custody).

*Uniform Child Witness Testimony by Alternative Methods Act*

Statutory interpretation is a question of law which this court reviews de novo. *Irving v. Irving*, 122 Nev. 494, 496, 134 P.3d 718, 720 (2006). Further, this court first looks to the statute's plain meaning before looking to the Legislature's intent. *Id.*

In 2003, Nevada adopted the Uniform Child Witness Testimony by Alternative Means Act (the Act), set forth in NRS 50.500 to 50.620. NRS 50.500; 2003 Nev. Stat., ch. 198 §§ 1-14, at 988-90. Instead of requiring a child witness to testify in open court, the Act provides an alternative method for the child witness. *See* NRS 50.520. In addition to criminal proceedings, the Act also applies in noncriminal proceedings, which includes family law proceedings. NRS 50.560(1); Hearing on S.B. 43 Before the Senate Comm. on the Judiciary, 72d Leg. (Nev., February 11, 2003).

Although the Act sets forth standards and procedures for determining when to allow a child to testify by alternative methods, it does not preclude an applicable state rule or law that permits another procedure for the district court to take testimony of a child by an alternative method. *See* NRS 50.560(2)(a). Indeed, at the time the district court interviewed the children in this case, an Eighth Judicial District Court Rule addressed judicially conducted child interviews. EDCR 5.06

SUPREME COURT
OF
NEVADA

(O) 1947A

8

provided in pertinent part: "In exceptional cases, the judge, master or commissioner may interview minor children in chambers outside the presence of counsel and the parties."[6] But the record on appeal is void of any findings stating that this case was exceptional. Rather, the district court judge stated that she was inclined to interview the children for a second time and that she would "talk to the children and see what's going on with them." Therefore, EDCR 5.06 did not apply to the case at hand and, thus, did not supersede the Act.

We now take this opportunity to clarify that child interviews must be recorded and must abide by the Act.[7] Further, we provide family law judges with guidance in interviewing child witnesses in the noncriminal proceedings over which they preside.

Under the Act, a judge *may* sua sponte order a hearing in determining whether a child witness should be allowed to testify by an alternative method. NRS 50.570(1)(a); *see also* NRS 1.428 (defining "judge"). However, a court *must* order a hearing if a party makes a motion and shows good cause. NRS 50.570(1)(b). Regardless of whether a

---

[6]EDCR 5.06 was in effect at the time of the parties' hearings and at the time the district court judge interviewed the children. However, the rule was repealed effective January 27, 2017. *In re Proposed Amendments to Part V of the Rules of Practice for the Eighth Judicial District Court*, ADKT 0512 (Order Amending the Rules of Practice for the Eighth Judicial District Court Part V, Dec. 28, 2016).

[7]Child witnesses must be sworn before testifying. *See* NRS 50.035. We note that the interview must be recorded in some fashion to preserve the questions asked and the answers given. *See* NRCP 16.215(f). This will prevent the judge from becoming a witness, as was the case here. *See* NRS 50.055(1).

hearing is ordered sua sponte or after a party shows good cause, the parties *must* be reasonably notified of the hearing, and the hearing *must* be recorded. NRS 50.570(2).

Furthermore, the family court judge *may* allow a child witness to testify by an alternative method upon finding by a preponderance of the evidence that such allowance "is necessary to serve the best interests of the child or enable the child to communicate with the finder of fact." NRS 50.580(2). In making this necessary finding, the judge *must* make relevant considerations as statutorily proscribed. *See* NRS 50.580(2)(a)-(e). If the judge makes a satisfactory finding, he or she *must* consider additional statutory factors to determine whether a child should be allowed to testify by an alternative method. *See* NRS 50.590(1)-(7). The judge must then support his or her determination by stating the findings of fact and conclusions of law in an order. NRS 50.600(1). The order also must specify certain conditions under which the testimony by an alternative method is to be presented. *See* NRS 50.600(2)(a)-(e). Notably, the judge's order "may be no more restrictive of the rights of the parties than is necessary under the circumstances to serve the purposes of the order." NRS 50.600(3).

The Act also sets forth constitutional safeguards. In conducting the alternative method of obtaining child witness testimony, the district court must afford each party with a full and fair opportunity to examine or cross-examine the child witness. NRS 50.610.[8]

---

[8]NRCP 16.215, which became effective after the district court decided this case, provides additional guidance on implementing the Act. *In re Adoption of NRCP 16.215*, ADKT 0502 (Order Adopting Nevada Rule of Civil Procedure 16.215, May 22, 2015).

Here, the district court erred by disregarding NRS 50.500 *et seq.* when it decided to interview the children off the record. We hold that a court is required to follow the Act's provisions set forth in NRS 50.500 *et seq.* Although Gordon's acquiescence to the court's interviews of the children may have waived the requirement for a hearing under NRS 50.570, it did not constitute a complete waiver of the Act's provisions, including the court's obligation to set forth the parameters of the alternative method in an order pursuant to NRS 50.600 or the parties' rights for a full and fair opportunity to examine or cross-examine the child witnesses under NRS 50.610.[9]

---

[9]We note that since the parties' hearing, the Nevada Rules of Civil Procedure have addressed stipulation by stating:

> The court may deviate from any of the provisions of this rule upon stipulation of the parties. The district courts of this state shall promulgate a uniform canvass to be provided to litigants to ensure that they are aware of their rights to a full and fair opportunity for examination or cross-examination of a child witness prior to entering into any stipulation that would permit the interview or examination of a minor child by an alternative method and/or third-party outsourced provider.

NRCP 16.215(h). Based on the plain language of this rule, the district court may only deviate from NRCP 16.215 upon the parties' stipulation, not NRS 50.500 *et seq.*

We also note that after the district court records the child interviews, as required, the court must retain the original recordings. *See* NRCP 16.215(i).

We therefore reverse and remand this matter to the district court for further proceedings consistent with this opinion.

_____, J.
Douglas

We concur:

_____, C.J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Stiglich