137 Nev., Advance Opinion 33

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| POPE INVESTMENTS, LLC, A DELAWARE LIMITED LIABILITY COMPANY; POPE INVESTMENTS II, LLC, A DELAWARE LIMITED LIABILITY COMPANY; AND ANNUITY & LIFE REASSURANCE, LTD., AN UNKNOWN LIMITED COMPANY, Appellants, vs. CHINA YIDA HOLDING, CO., A NEVADA CORPORATION, Respondent. | No. 79807 **FILED** JUL 08 2021 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |
| POPE INVESTMENTS, LLC, A DELAWARE LIMITED LIABILITY COMPANY; POPE INVESTMENTS II, LLC, A DELAWARE LIMITED LIABILITY COMPANY; AND ANNUITY & LIFE REASSURANCE, LTD., AN UNKNOWN LIMITED COMPANY, Appellants, vs. CHINA YIDA HOLDING, CO., A NEVADA CORPORATION, Respondent. | No. 80709 |

Consolidated appeals from a district court summary judgment and post-judgment order awarding attorney fees in a corporations action. Eighth Judicial District Court, Clark County; Nancy L. Allf, Judge.

*Reversed and remanded.*

Boies Schiller Flexner LLP and Richard J. Pocker, Las Vegas; Chasey Law Offices and Peter L. Chasey, Las Vegas, for Appellants.

SUPREME COURT
OF
NEVADA

(O) 1947A

21-19570

Holland & Hart LLP and Joshua M. Halen and J. Robert Smith, Las Vegas, for Respondent.

---

BEFORE THE SUPREME COURT, PARRAGUIRRE, STIGLICH, and SILVER, JJ.

*OPINION*

By the Court, STIGLICH, J.:

These consolidated appeals concern whether shareholders had a right to dissent from a corporate merger and seek fair value for their shares. When a corporation executes a merger, shareholders that object may dissent and obtain payment of fair value for their shares. There is generally no right to dissent, however, when the shares are publicly traded securities. This limitation is known as the market-out exception. This exception is itself subject to several exceptions, including where the board of directors' resolution approving the merger expressly provides otherwise.

What constitutes a board of directors' "resolution" and when a resolution approving a plan of merger provides dissenters' rights are issues of first impression that we clarify here. We hold that a board's resolution is the expression of its intent to bind the corporation to a specific course of conduct, when the directors are acting as agents of the corporation. The resolution is not defined by any particular formal requirements or "magic words." We further hold that for a shareholder to exercise dissenters' rights when the market-out exception applies, the resolution must "expressly provide otherwise" than that "there is no right to dissent."

Appellants here owned shares of respondent's stock and sought to exercise dissenters' rights when respondent commenced a corporate merger offering per-share compensation that appellants found inadequate. The shareholders had a right to dissent because the board's resolution stated that it unconditionally approved the merger agreement and the merger agreement provided that there was a right to dissent that could be validly exercised and a class of shareholders that could exercise it. The board's resolution thus provided appellants with the right to obtain an appraisal of the fair value of their shares. We reverse and remand for further proceedings.

## PROCEDURAL HISTORY AND FACTS

In 2016, respondent China Yida Holding, Co. (CY) merged with a private holding company, taking CY private and delisting it from the NASDAQ stock exchange. Appellants Pope Investments, LLC, Pope Investments II, LLC, and Annuity & Life Reassurance, Ltd. (collectively, Pope) owned 23% of CY's shares and opposed the per-share payment in the merger as inadequate.

CY was a Nevada holding company owning subsidiary entities that operate tourist destinations in China. CY was publicly traded on NASDAQ under the ticker symbol CNYD before the merger here. CEO Minhua Chen and COO Yanling Fan (Principal Shareholders) are board directors who collectively owned 58% of CY's shares. The board consisted of Principal Shareholders and three non-shareholding directors, Renjiu Pei, Chunyu Yin, and Fucai Huang. Principal Shareholders proposed purchasing the company. The independent directors formed the Special Committee to consider the proposal and structure a going-private transaction. The Special Committee recommended a merger where CY would merge into a new holding company in which Principal Shareholders

would hold the new shares, while the outstanding shares of CY would be canceled and the shareholders paid cash consideration. Principal Shareholders opposed requiring the merger to be approved by a majority of the minority shareholders, and thus their votes alone would determine the outcome. The Special Committee concluded that $3.32 per share would be appropriate. The Special Committee recommended and the board approved the original merger agreement in March 2016. Following revisions to the transaction structure, the Special Committee approved and recommended the amended merger agreement on April 12, 2016. The same day, the board (with Principal Shareholders abstaining as required by statute) authorized, approved, and recommended that the shareholders approve the merger agreement.[1]

The merger agreement begins with declarations stating the relevant actions of the parties involved. The provision addressing the board's action states:

> [T]he Company Board (acting upon the unanimous recommendation of the Special Committee) has (i) unanimously approved this Agreement, and approved the execution and delivery by the Company of this Agreement, the performance by the Company of its covenants and agreements contained herein and the consummation of the transactions contemplated hereby in accordance with the NRS upon the terms and subject to the conditions contained herein and (ii) resolved to recommend that the Company Shareholders authorize this Agreement and the Merger in accordance with the NRS[.]

---

[1]All references to the merger agreement refer to the April amended merger agreement, which superseded the original.

The merger agreement repeated this acknowledgment in its operative provisions. The merger agreement also stated its effect on dissenting shareholders' interests, setting forth treatment for four classes of shares: the dissenting shares, Principal Shareholders' shares, other common stock (excluding dissenting and Principals' shares), and the existing shares of the new company. The agreement set forth the specific treatment for the class of dissenting shares, notably providing that a dissenting shareholder

> who has validly exercised and not lost its rights to dissent from the Merger pursuant to the NRS (collectively, the "Dissenting Shares") shall not be converted into or exchangeable for or represent the right to receive the Per Share Merger Consideration . . . and shall entitle such Dissenting Shareholder only to payment of the fair value of such Dissenting Shares as determined in accordance with the NRS. If any Dissenting Shareholder shall have effectively withdrawn (in accordance with the NRS) or lost the right to dissent, then . . . the Dissenting Shares held by such Dissenting Shareholder . . . shall be cancelled and converted into and represent the right to receive the Per Share Merger Consideration . . . .

The merger agreement did not discuss the procedure by which a shareholder may dissent from or support the proposed merger.

The proxy statements discussed this procedure in depth. Shortly after filing the proposed merger agreement with the U.S. Securities and Exchange Commission (SEC), CY filed preliminary and then final proxy statements with the SEC and mailed the same to shareholders.[2] The proxy statement provided: "You have a statutory right to dissent from the Merger

---

[2]All references to the proxy statement refer to the May 25, 2016, definitive proxy statement, rather than the April 13, 2016, preliminary proxy statement.

and demand payment of the fair value of your shares of Company Common Stock as determined in a judicial appraisal proceeding in accordance with [NRS 92A.300-.500]." It informed shareholders that the demand must be made within 30 days of when the "Notice of Merger and Dissenters' Rights" is mailed and must otherwise comply with the relevant statutory provisions and that failure to comply with the "Dissenters' Rights Provision," annexed to the proxy statement, would forfeit dissenters' rights.[3] In discussing why the board's Special Committee concluded that the merger proposal was fair to shareholders other than Principal Shareholders, the Special Committee noted that other shareholders were "entitled to exercise dissenters' rights and demand fair value for their shares of Company Common Stock as determined by a Nevada state district court." Principal Shareholders (collectively with their wholly owned new entity) represented that the proposal was fair for the same reason. The annexed section discussing "Dissenters' Rights for Holders of Common Stock" again provides that a shareholder "is entitled to dissent to the Merger, and obtain payment of the fair value of the Shares," setting forth the procedures by which those rights

---

[3]The proxy statement reiterated these points in a question-and-answer section:

> Q: Am I entitled to exercise dissenters' or appraisal rights instead of receiving the Merger Consideration for my shares of Company Common Stock?
>
> A: Yes, Nevada law provides that you may dissent from the disposal of assets. If you do not comply with the procedures governing dissenters' rights set forth under the Nevada Revised Statutes and explained elsewhere in this proxy statement, you may lose your dissenters' and appraisal rights.

SUPREME COURT
OF
NEVADA

(O) 1947A

are exercised in considerable detail. Pope timely notified CY of its intent to invoke these statutory rights and seek fair value for its shares.

On June 28, 2016, CY held a shareholder meeting, at which a majority of the shareholders entered a resolution approving the merger. Subsequently, Pope submitted a payment demand, and CY paid Pope the amount CY proffered as the fair value for the shares, $3.32 per share, as the appraisal process continued. Pope submitted its fair-value estimate to CY, valuing the company at $23.28 per share and its shares at more than $21 million, based on Pope's determination of CY's net asset value. CY rejected Pope's determination and petitioned the district court to determine fair value for the shares. The parties retained experts to support their competing valuations and litigated the dispute.

In 2019, CY moved for summary judgment, arguing that Pope never had dissenters' rights because the market-out exception applied and the board did not pass a resolution providing dissenters' rights. CY made an offer of judgment pursuant to NRCP 68 of $10,000 that Pope refused. The district court granted summary judgment for CY. The district court found that CY was a covered security and thus that the market-out exception applied. It found that the resolution adopted at the June 28, 2016, shareholders' meeting did not provide dissenters' rights and that this exception to the market-out exception did not apply. It also found that neither the merger agreement nor the proxy statement was a board resolution and that the merger agreement did not provide a right to dissent.

CY moved for attorney fees, seeking payment for its fees incurred from the time of its offer of judgment. Pope opposed the motion, arguing that CY's offer was unreasonable and its rejection was reasonable.

The district court ruled for CY and awarded fees under NRCP 68. Pope appealed both rulings.

## DISCUSSION

Pope argues that it had a right to dissent from the merger and obtain an appraisal of the fair value of its shares because the board approved a right to dissent for dissenting shareholders. Conversely, CY argues that there was no right to dissent because the market-out exception applied and no exception to that exception was present.

This court reviews de novo a district court's summary judgment, without deference to the district court's findings. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate when the pleadings and other evidence present no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* (applying NRCP 56). The evidence and reasonable inferences from it "must be viewed in a light most favorable to the nonmoving party." *Id.*

The court also reviews matters of statutory interpretation de novo, applying the statute's plain meaning where it is not ambiguous. *Irving v. Irving*, 122 Nev. 494, 496, 134 P.3d 718, 720 (2006). A statute is ambiguous when it is susceptible to multiple reasonable interpretations. *Id.* An ambiguous statute should be interpreted consistent with legislative intent, taking into account reason and public policy. *Valdez v. Emp'rs Ins. Co. of Nev.*, 123 Nev. 170, 174, 162 P.3d 148, 151 (2007).

*CY's shares were covered securities, and Pope had dissenting rights only if it demonstrated an exception to the market-out exception*

Determining whether Pope had a right to dissent requires reviewing the statutes providing and limiting the availability of a right to dissent, NRS 92A.380 and NRS 92A.390, and the relevant board actions to

SUPREME COURT
OF
NEVADA

(O) 1947A

determine whether they constituted "the resolution of the board of directors approving the plan of merger," within the meaning of NRS 92A.390(1).

Nevada law provides that a majority of a corporation's shareholders must approve a corporate merger. *Cohen v. Mirage Resorts, Inc.*, 119 Nev. 1, 9, 62 P.3d 720, 726 (2003). Shareholders have a right to dissent from certain corporate actions—merger among them—and to obtain payment of fair value for their shares. NRS 92A.380(1)(a). NRS 92A.300-.500 set forth the procedures by which a dissenting shareholder exercises the right to dissent. The right to dissent is limited by the so-called "market-out" exception, which provides that there is no right to dissent for shareholders in a "covered security," which is a security registered under the relevant provisions of the Securities Act of 1933, 15 U.S.C. § 77r(b)(1). NRS 92A.390(1)(a). Covered securities include securities trading on a national securities exchange, 15 U.S.C. § 77r(b)(1)(A), which includes NASDAQ for the purposes of this rule, *Cape Ann Inv'rs LLC v. Lepone*, 296 F. Supp. 2d 4, 11 (D. Mass. 2003).

The market-out exception is subject to several limitations, pertinently here that "there is no right of dissent . . . unless the articles of incorporation of the corporation issuing the class or series or the resolution of the board of directors approving the plan of merger, conversion or exchange expressly provide otherwise." NRS 92A.390(1). Here, the basic facts are not in dispute. CY was a corporation that sought to merge with a private company, the Pope entities were shareholders that sought to dissent and receive fair value for their shares, CY was listed on NASDAQ at the time of the proposed merger, CY's stock was thus a covered security, and CY's articles of incorporation are silent as to a right to dissent. The contested facts turn on whether the board resolution approving the plan of

merger expressly provided otherwise than that there was no right to dissent.

"Resolution" is not a term of art or an instrument with specific formal requirements when discussing board resolutions generally. NRS Chapter 92A does not define a board resolution or impose any procedural or formal requirements for board action to constitute a resolution. NRS 78.315(1) provides simply that an act by directors holding a majority of the directors' voting power is an act of the board, unless the articles of incorporation or the bylaws provide otherwise.[4] *Black's Law Dictionary* defines a corporate resolution as "[f]ormal action by a corporate board of directors or other corporate body authorizing a particular act, transaction, or appointment." *Resolution, Black's Law Dictionary* (11th ed. 2019); *see also* 18A Am. Jur. 2d *Corporations* § 253 (2015) (stating that a resolution is an "enactment of a temporary nature providing for the disposition of certain administrative business of the corporation"). We therefore hold that a board resolution is an act by the board of directors, taken in their capacity as directors of the corporation, to authorize the corporation to undertake a particular course of conduct, unless defined otherwise by the articles of incorporation or bylaws.

The legislative history likewise supports the conclusion that the board's resolution in this instance need not meet any formal requirements beyond being a clear expression of the intent of the directors acting in their capacity as directors. NRS 92A.390(1) was amended in 2013 to add this particular clause, permitting companies to provide dissenters' rights by board resolution, in addition to by statement in the articles of incorporation.

---

[4]The articles of incorporation and corporate charter are silent in this regard, and the record does not contain CY's bylaws.

SUPREME COURT
OF
NEVADA

(O) 1947A

10

2013 Nev. Stat., ch. 281, § 25 at 1285. The proponent of the bill, Robert Kim, acting as chair of the State Bar's business law section, explained that the addition was to allow a board to adopt dissenters' rights on behalf of shareholders to ensure fair value in corporate transactions and protect shareholders' interests. Hearing on S.B. 441 Before the Senate Judiciary Comm., 77th Leg. (Nev., Apr. 2, 2013); Hearing on S.B. 441 Before the Assembly Judiciary Comm., 77th Leg. (Nev., May 6, 2013). Thus, the applicable law provides that the board's resolution need not meet any formal requirements beyond being a clear expression of the intent of the directors acting in their capacity as directors. And accordingly, whether a resolution provides "otherwise" will depend on what, precisely, is determined to be the resolution in question.

*CY's board resolution provided a right to dissent*

As a threshold matter, the district court's determination regarding the board resolution is incorrect. The district court considered the shareholders' resolution at the June 28 meeting where the shareholders voted on the merger proposal. Of note, both parties contributed to this error by mistakenly directing the court to the minutes of the shareholders' meeting.[5] Plainly, this was not a board resolution.

It is evident that a board resolution approving the merger existed. In describing the background of the merger, both the merger agreement and the proxy statement represent that the board agreed to approve the plan of merger on April 12, after the Special Committee approved the merger plan and recommended it to the board.

---

[5]Reasonably, whether a right to dissent is part of the transaction voted upon should be resolved before the meeting so that shareholders can be fully informed of their options.

Correspondingly, no party argues that there was no board resolution approving the plan of merger. The record does not contain minutes of the April 12 board meeting or any standalone document purporting to be the April 12 board resolution approving the plan of merger. The only April 12 document in the record containing the board's approval of the merger is the April 12 merger agreement itself.[6] The court thus looks to the provisions of the merger agreement describing the board's action to determine what the board resolved in approving the merger.

Merger agreements are contracts, and the court seeks to ascertain the parties' shared intent in interpreting them. *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 834 (Del. Ch. 2007). "When the facts are not disputed, contract interpretation is subject to de novo review as a question of law." *Vegas United Inv. Series 105, Inc. v. Celtic Bank Corp.*, 135 Nev. 456, 459, 453 P.3d 1229, 1231 (2019). The court should harmonize contractual provisions and seek to ensure that no provision is rendered meaningless. *Id.* at 459, 453 P.3d at 1231-32.

The declarations to the merger agreement briefly describes the actions of the board, the Special Committee of the board, Principal Shareholders, CY, and the acquisition company. It does not state that it is the board's resolution to approve the merger, but it does state that the board approved the merger agreement, approved CY's execution and delivery of the merger agreement, approved CY's performance of the merger

---

[6]The preliminary proxy statement does not appear to be the relevant board resolution because it was dated April 13. Moreover, its purpose was to give notice of that approval and the upcoming vote and to recommend that shareholders support the merger.

agreement's provisions, approved CY's consummation of the transactions contemplated in the agreement, and resolved to recommend the agreement to shareholders.[7]    The declarations conclude with the company's acknowledging and agreeing to be bound by the provisions in the merger agreement. The operative provisions of the merger agreement provide that one class of shareholders is dissenting shareholders and address their treatment where they have "validly exercised and not lost [their] rights to dissent."

We conclude that the board resolution "expressly provided otherwise" than that "there is no right to dissent" because the introduction stated that it unconditionally approved the merger agreement and its terms and execution and the merger agreement provided that there was a right to dissent that could be validly exercised and a class of shareholders that could exercise it. The exception in NRS 92A.390(1) states that "[t]here is no right of dissent" unless the board resolution "expressly provide[s] otherwise"; it does not require expressly providing a right to dissent. This distinction is important here, as the resolution stated that the board agreed to be bound by the merger agreement, and dissenting shareholders exercising a right to dissent are part of that transaction. This interpretation is also consistent with the representation in the proxy statement that shareholders had a right to dissent.    Moreover, the Special Committee and Principal Shareholders—collectively comprising the board of directors—represented in the proxy statement that the merger was fair in part because there was

---

[7]The declarations describe several separate agreements related to the merger and those agreements are described in the declarations and attached to the merger agreement as exhibits. No such reference is made to a standalone board resolution.

a right to dissent. The directors, therefore, intended to provide this remedy to shareholders, consistent with the reason given to the Legislature to amend the statute and provide this exception. Noting that a resolution generally is not constrained by any formal requirements, reading the declaration of the board's action in the merger agreement as a resolution permitting a right to dissent is reasonable in light of (1) the provision for dissenting shareholders in the merger agreement, (2) the contemporaneous separate agreement of all of the directors that dissenters' rights were available, and (3) the notice to shareholders that they had dissenters' rights.

*CY's arguments that dissenters' rights were not available are not persuasive*

CY disagrees that the merger agreement provisions regarding dissenters' rights envisioned the operation of such rights. Its contentions are unpersuasive. In rebutting the argument that the merger agreement constituted a board resolution, CY dismisses the merger agreement's treatment of dissenting shareholders as having no effect because it did not clearly waive the market-out exception or expressly state a right to dissent. This reads requirements into the statute that are not there. CY seeks to impose a requirement that the company must affirmatively waive the market-out exception or bestow a right to dissent on shareholders. This is not what NRS 92A.390(1) requires. Rather, the board's resolution must provide otherwise than that there is no right to dissent—that is, for a set of circumstances in which there is a right to dissent—to trigger the exception to the market-out exception.

CY also urges that the dissenting-shareholder section in the merger agreement had no effect because it merely described the dissent statutes. This is unpersuasive because it renders these provisions of the merger agreement meaningless and it requires the absurd reading that the merger agreement provides for the treatment of a class of shareholders that

 

does not exist. *See* Restatement (Second) of Contracts § 203 (1981) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect[.]").

Relatedly, CY argues that the provisions regarding dissenters' rights do not state that there is a right to dissent because the provisions note that the rights must be exercised in accordance with the relevant statutory provisions and the statutes set forth the market-out exception. The relevant statutes, however, also state circumstances where the exception to the exception applies. The availability of dissenters' rights is "in accordance with the NRS" just as much as the market-out exception is.

Accordingly, the district court erred in concluding that the board's resolution did not authorize dissenting shareholders to seek a fair-value appraisal, and we reverse its grant of summary judgment. And as Pope has no longer failed to obtain a more favorable judgment after rejecting CY's offer of judgment, we reverse the award of attorney fees. *See* NRCP 68(f); *Schwabacher & Co. v. Zobrist*, 97 Nev. 97, 98, 625 P.2d 82, 82 (1981) (reversing NRCP 68 award because the basis for the ruling no longer existed, where the underlying decision was reversed for a trial on the merits).

## CONCLUSION

When a corporation executes a merger, its board of directors may ensure that the rights of shareholders are protected by authorizing that shareholders may dissent from the transaction and obtain payment of fair value for their shares. This decision turns on identifying the board's resolution approving the merger and determining whether it showed that the board intended to confer this right. What constitutes the board's resolution is not limited by any particular formal requirements, and here,

SUPREME COURT
OF
NEVADA

(O) 1947A

the statement of the board's approving the merger agreement in the introduction to the merger agreement constitutes the relevant board resolution. The resolution here provided the shareholders with a right to dissent because the merger agreement envisioned that there was authority to dissent that could be validly exercised. In so doing, the resolution provided a right to dissent. This reading is supported by contemporaneous representations to shareholders that they had rights to dissent and by all of the directors that the transaction was fair because objecting shareholders had a right to dissent. Accordingly, Pope is entitled to a fair-value appraisal, and we thus reverse the district court's summary judgment and NRCP 68 award and remand for further proceedings consistent with this opinion.

_____, J.
Stiglich

We concur:

_____ J.
Parraguirre

_____, J.
Silver